ACCEPTED
06-15-00009-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/7/2015 12:06:42 PM
DEBBIE AUTREY
CLERK

# No. 06-15-00009-CV

## IN THE COURT OF APPEALS FOR THE

### SIXTH DISTRICT OF TEXAS

#### AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/7/2015 12:06:42 PM
DEBBIE AUTREY
Clerk

DENNIS RAYNER and
JOE TEX XPRESS, INC.                                        **APPELLANTS**

V.

KRISTA DILLON                                                        **APPELLEE**

---

Appeal from the District Court of Hopkins County, Texas
62nd Judicial District
Honorable Will Biard Presiding

---

# BRIEF OF APPELLEE

John R. Mercy
Texas State Bar No. 13947200
MERCY ✶ CARTER ✶ TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX  75503
Telephone:  (903) 794-9419
Facsimile:   (903) 794-1268
E-mail: jmercy@texarkanalawyers.com

Brent Goudarzi
Texas State Bar No. 00798218
Email: brent@goudarzi-young.com
Marty L. Young
Texas State Bar No.  24010502
Email: myoung@goudarzi-young.com
Geoffrey Hoover
Texas State Bar No.  24074437
Email: ghoover@goudarzi-young.com
GOUDARZI & YOUNG
P.O. Box 910
Gilmer, TX 75644
Telephone:   (903) 843-2544
Facsimile:    (903) 843-2026

ATTORNEYS FOR APPELLEE

**Oral Argument Requested**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellee lists below the names and addresses of all parties to the trial court's final judgment together with their counsel in the trial court. This list is provided so that the justices of this Court may evaluate possible disqualification and recusal, and so that the Clerk of the Court of Appeals may notify all parties of this Court's final judgment.

Dennis Rayner and
Joe Tex Xpress, Inc.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appellants

Bryan P. Reese
Jennifer M. Lee
FEE, SMITH, SHARP & VITULLO, L.L.P.
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, TX 75240.. . . . . . . . . . . . . . . . Trial and Appellate Counsel for Appellants

Samuel V. Houston, III
HOUSTON DUNN, PLLC
4040 Broadway, Suite 440
San Antonio, TX 78209.. . . . . . . . . . . . . . . . . . . Appellate Counsel for Appellants

Krista Dillon. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appellee

Brent Goudarzi
Marty Young
Geoffrey Hoover
GOUDARZI & YOUNG
P.O. Box 910
Gilmer, TX 75644. . . . . . . . . . . . . . . . . . . . . . . . . . . . . Trial Counsel for Appellee

John C. Ginn
SMITH MCDOWELL GINN
P.O. Box 493
Sulphur Springs, TX 75483.. . . . . . . . . . . . . . . . . . . . . Trial Counsel for Appellee

i

John R. Mercy
MERCY ✷ CARTER ✷ TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX 75503. . . . . . . . . . . . . . . . . . . . . . Appellate Counsel for Appellee

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Response to Issue Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       Gross Negligence.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       Objective and Subjective Elements.. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       Evidentiary Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       Objectively Joe Tex Knew of the Extreme Risk.. . . . . . . . . . . . . . . . . . 11

       Objectively Rayner Knew of the Extreme Risk. . . . . . . . . . . . . . . . . . . 13

       Evidence Supports Objective Prong for Gross Negligence. . . . . . . . . . . 14

       Joe Tex Proceeds with Conscious Indifference. . . . . . . . . . . . . . . . . . . 14

       Rayner Proceeds with Conscious Indifference. . . . . . . . . . . . . . . . . . . 15

       Evidence Supports the Subjective Prong for Gross Negligence.. . . . . . . . 16

    Defendants Had No Credibility.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    Lack of Evidentiary Support for Defendants' Argument. . . . . . . . . . . . . . 17

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Appendix:

    A  -  Accident Report Drawing (P. Ex. 17 p. 6)

    B  -  Hours of Service: Record of Duty Status Falsification List
          (P. Ex. 3 [emphasis added])

    C  -  Joe Tex July 12, 2010 Violation Report (P. Ex. 18 [emphasis added])

    D  -  4.30.10 Joe Tex letter (P. Ex. 26 [emphasis added])

    E  -  7.1.10 Joe Tex letter (P. Ex. 24 [emphasis added])

    F  -  Joe Tex letter (P. Ex. 27 [emphasis added])

# INDEX OF AUTHORITIES

**Cases**:                                                                                      **Page**


Boerjan v. Rodrigues,
436 S.W.3d 307 (Tex. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

Columbia Medical Center of Las Colinas, Inc. v. Hogue,
271 S.W.3d 238 (Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dalworth Trucking Co. V. Bulen,
924 S.W.2d 724 (Tex. App. – Texarkana 1996, no writ). . . . . . . . . . . . . . 16

In Re H.R.M.,
209 S.W.3d 105 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

In Re J.O.A.,
283 S.W.3d 336 (Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

State v. Addington,
588 S.W.2d 569 (Tex. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

State v. K.E.W.,
315 S.W.3d 16 (Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Transportation Ins. Co. V. Moriel,
879 S.W.2d 10 (Tex. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U-Haul International, Inc. v. Waldrip,
380 S.W.3d 118 (Tex. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

USA Truck, Inc. v. West,
189 S.W.3d 904, 907 (Tex. App. – Texarkana 2006, no writ). . . . . . . . 10, 17

**Statutes**:

TEX. CIV. PRAC. & REM. CODE ANN.
 § 41.001(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
 § 41.001(11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
 § 41.003(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

**Code of Federal Regulations**:

 49 CFR 395. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 5
 49 CFR 395.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

IN THE COURT OF APPEALS FOR THE

SIXTH DISTRICT OF TEXAS

AT TEXARKANA

DENNIS RAYNER and
JOE TEX XPRESS, INC.                                    APPELLANTS

V.

KRISTA DILLON                                              APPELLEE


## BRIEF OF APPELLEE

TO THE HONORABLE COURT OF APPEALS:

COMES NOW Appellee, KRISTA DILLON, and files this her brief in

response to Appellants' brief, and would show unto the Court the following.


## STATEMENT OF THE CASE

Nature of the case:        This is a truck wreck case.[1]                .

Trial court:               Honorable Will Biard, 62nd Judicial District, Hopkins
                           County

Parties:                   Plaintiffs:    Dennis Rayner
                                          Joe Tex Xpress, Inc.

                           Defendant:  Krista Dillon

---

[1] Appellant, Dennis Rayner, will be referred to as "Rayner", Appellant, Joe Tex Xpress, Inc, will be referred to as "Joe Tex", Rayner and Joe Tex will be referred to collectively as "Defendants", and Appellee, Krista Dillon, will be referred to as "Dillon." The Clerk's Record will be cited as (CR _); the Reporter's Record will be cited as (_ RR _); and exhibits will be cited as (P. Ex. _).

1

Trial:              The case was tried for seven days to a jury.

Verdict:            The jury found Rayner and Joe Tex liable and awarded $1,110,629.76 in actual damages. (CR 3011-13). The jury also found Rayner and Joe Tex grossly negligent, awarding $2,000.00 in exemplary damages against Rayner and $3,000,000.00 in exemplary damages against Joe Tex. (CR 3014-15, 3022-23). The trial court reduced the exemplary damages against Joe Tex to $1,679,295.52 and entered judgment. (CR 3032).

Post-Trial Motions: Defendants filed a motion for new trial which was overruled by operation of law. This appeal ensued.

# RESPONSE TO ISSUE PRESENTED

## Responsive Issue

**Where the evidence included acknowledgment that:**
- **maintaining accurate log books was required under federal law,**
- **the purpose of log books was to prevent fatigued drivers from driving 18-wheelers,**
- **the Department of Transportation had found Joe Tex in violation of the law,**
- **Rayner was the second most cited driver for Joe Tex,**
- **Joe Tex paid a significant fine for making false reports of duty status on log books**
- **Rayner was missing ten log books during the month before the accident,**
- **Rayner's log books for the day before and the day of the accident were falsified,**
- **The jury heard evidence that Joe Tex and Rayner were not credible; and**
- **Rayner ran Dillon off the road because he didn't see her.**

**There was clear and convincing evidence to support the jury's finding of gross negligence against Rayner and Joe Tex.**

Joe Tex claimed that Rayner was one of "the best hands he ever had." (2 RR 300). At the trial Rayner admitted that he received a four-year sentence for leaving the scene of a hit-and-run accident, "sucked at logs", falsified his log books, had been found to have falsified his log books repeatedly, falsified his log books on the day before and the day of the accident, had been sloppy with log books for years and didn't ever get disciplined. (5 RR 218, 225, 235, 245, 278, 294, 299, 331). Despite this Joe Setina, president and owner of Joe Tex, would still let Rayner drive a Joe Tex truck even today. (2 RR 276).

On July 23, 2010, Rayner hit Dillon's Chevy Malibu from behind and ran her off Interstate 30. (P. Ex. 17, Appendix A). He claimed that he never saw her until after her car was hurdling through the median. (5 RR 284-285). Rayner claimed that Dillon was in his blind spot even though she was in front of him. (5RR 284-285). At trial Rayner and Joe Tex accepted full responsibility for the accident. (2 RR 248; 5 RR 202). The jury agreed that it was Rayner's fault. (CR 3006).

The trucking industry is heavily regulated under the Federal Motor Carrier Safety Act. (*See* 49 CFR 395). Because driving an 18-wheeler while fatigued is extremely dangerous, the Federal Motor Carrier Safety Administration has promulgated specific regulations that restrict the number of driving/working hours. (49 CFR 395.3; 5 RR 204). These regulations require drivers to keep log books

detailing the hours that they work, are driving, on duty, sleeping, and off duty. (49 CFR 395). The purpose of these regulations is to protect the public from the known extreme danger of fatigued drivers. (2 RR 79). Joe Tex knew all this. (2 RR 256; 3 RR 27-28).

But Joe Tex had a systemic problem in violating federal regulations designed to prevent fatigue. In April 2010, just three months before this accident, Joe Tex was audited by the Department of Transportation. (P. Ex. 3 and Appendix B). The DOT audit of a random thirty-day period showed that Joe Tex had 48 violations, of which 34 were critical violations. (2 RR 91; 3 RR 57). Rayner was the second worst offender during the DOT audit time frame. (2 RR 156, 300). In that thirty-day period Rayner had 9 violations. (P. Ex. 3, 29; Appendix B). As a result of the DOT audit Joe Tex had its rating reduced from satisfactory to conditional, and was fined $17,000.00. (2 RR 143, 150, 261, 275; 7 RR 134).

Rayner admitted that he did not keep proper log books and that it was known by Joe Tex. (5 RR 223, 239-240, 278). He further testified that no action was ever taken against him because of his log book violations. (5 RR 223, 239-240). He continued to not properly maintain log books right through the accident. (5 RR 294). During the month prior to the accident he had 12 missing log books, had inaccurate log books on the day before and the day of the accident and admitted to pre-filling out his log books before beginning to work even on the day of the accident. (5 RR 235,

5

294-295). (P. Ex. 18, Appendix C). Rayner and Joe Tex admitted that accurate log books were critical in determining whether a driver was fatigued. (2 RR 79, 233, 256; 5 RR 12, 31, 206). But Rayner admitted that because of the inaccuracies in his log books that if his log books were wrong on the day before that the jury could not tell that he was not fatigued. (5 RR 251). He did admit that the times on his log books for the day of the accident were "screwed up again". (5 RR) 294).

Based on the above evidence the jury found both Rayner and Joe Tex grossly negligent.

## STATEMENT REGARDING ORAL ARGUMENT

The Court should grant oral argument for the following reasons:

a)    Oral argument would give the Court a more complete understanding of the facts presented in this appeal. Tex. R. App. P. 39.1(c).

b)    Oral argument would significantly aid the Court in deciding the case. Tex. R. App. P. 39.1(d).

# SUMMARY OF THE ARGUMENT

After having been cited and fined by the DOT for 48 violations in a thirty-day period three months before this accident, Joe Tex made no attempt to correct the log book falsifications.

Joe Tex knew of the risks of falsifying log books and that it would lead to fatigued drivers. Joe Tex knew that the risk would lead to catastrophic injuries. But Joe Tex did not appear to care.

Joe Tex didn't fire drivers that falsified log books. Joe Tex didn't discipline drivers that falsified log books. Joe Tex didn't follow its own policies regarding preventing falsifying log books.

As a result on July 23, 2010, Krista Dillon was run over by a Joe Tex driver. A Joe Tex driver who continually falsified log books. A Joe Tex driver who falsified his log books the day before the accident. A Joe Tex driver who falsified his log book on the day of the accident. A Joe Tex driver who claimed to not see Dillon in front of him until he had run her off the road.

This evidence complete with the total lack of credibility of Rayner and Joe Tex support the jury's finding of gross negligence.

> "It's my call. It's my company. I can kind of do what I want." – Joe Setina (3 RR 27)

With just such a cavalier attitude, Setina, as president of Joe Tex, put drivers on the road. Joe Tex knew it was catastrophically dangerous to have fatigued drivers on the road. Despite this, Joe Tex did not require its drivers to maintain proper log books nor train them to do so. Joe Tex did not enforce its own policies regarding log books. Joe Tex did not discipline drivers for failure to properly fill out log books. Joe Tex did not check to see if drivers' log books accurately reflected whether they were fatigued or not. Joe Tex lied to the DOT about having hired a safety manager. Joe Tex lied to the DOT regarding having taken disciplinary action against the "worst offending drivers." It is against this background that Rayner and Joe Tex now attempt to argue there was not evidence of gross negligence.

**Gross Negligence**

Gross negligence must be proved by a clear and convincing evidence. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(2). While the proof must be of a heavier weight than merely the greater weight of the credible

9

evidence, there is no requirement that the evidence must be unequivocal or undisputed. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979).

**Objective and Subjective Elements**

Exemplary damages may be awarded if the proof shows that the harm suffered resulted from gross negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(3). Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 20 (Tex. 1994). USA Truck, Inc. v. West, 189 S.W.3d 904, 907 (Tex. App. – Texarkana 2006, no writ). "Gross negligence" means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the harm to others; and (B) of which the actor had actual subjective awareness of the risk involved but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11). Under the objective element, an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." Boerjan v. Rodrigues, 436 S.W.3d 307, 311 (Tex. 2014). Under the subjective element "actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.* Circumstantial evidence may suffice to prove either element. *Id.*

**Evidentiary Review**

In evaluating the legal sufficiency of the evidence, this Court must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that its finding was true. State v. K.E.W., 315 S.W.3d 16, 20 (Tex. 2010). Columbia Medical Center of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 248 (Tex. 2008). This Court must review the evidence in the light more favorable to the jury's finding of gross negligence. U-Haul International, Inc. v. Waldrip, 380 S.W.3d 118, 138 (Tex. 2012). This Court must resolve any disputed facts in favor of the finding if a reasonable fact finder could have done so. K.E.W., 315 S.W.3d at 20. This Court must disregard evidence contrary to the finding unless a reasonable fact finder could not. *Id.* The jury, not the appellate court, is the sole judge of the credibility and demeanor of the witnesses. In Re J.O.A., 283 S.W.3d 336, 346 (Tex. 2009).

In forming a factual sufficiency review this Court must determine whether on the entire record a fact finder could reasonably form a firm conviction or belief that its finding was true. In Re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006). This Court though may still not substitute its judgment for that of the jury. *Id.*

**Objectively Joe Tex Knew of the Extreme Risk**

Joe Setina, the president of Joe Tex, admitted that an improperly driven 18-wheeler can cause serious damage to people. (2 RR 256). He admitted that he knew fatigue was a big problem that could cause catastrophic injuries. (2 RR 256). He

11

further admitted that the way to keep up with drivers' fatigue was by monitoring the log books. (2 RR 256). He further testified that he recognized the problem with drivers being tired and causing accidents. (3 RR 66). He also admitted that he knew that falsifying the log books was a "bad thing." (2 RR 259). He further admitted that he knew Joe Tex drivers were falsifying log books before the accident. (2 RR 298). He further admitted that before the accident Rayner was the second worst driver at falsifying log books. (2 RR 300). He also testified that because Rayner was falsifying log books it was possible that on the date of the accident he was also "cooking the books." (2 RR 330). He further testified that fatigued drivers could catastrophically injure people. (3 RR 29).

Angie Dunavant was the CFO and safety supervisor of Joe Tex.[2] (2 RR 62). She admitted that she knew the purpose of log books was to keep tired drivers off the road because bad things could happen. (2 RR 79). She also testified that if Joe Tex did not take action against drivers that falsified log books it sent a message that Joe Tex "just didn't care." (2 RR 80). She knew prior to the accident that she had drivers that were falsifying the log books. (2 RR 86). She also knew prior to the accident that Rayner had been found to have falsified his log books. (2 RR 86-87). She admitted that Joe Tex made more money off Rayner than other drivers. (2 RR 168).

---

[2] Dunavant's only qualification to be CFO of a trucking company was that she was a former dental hygienist and Setina's mother-in-law. (2 RR 71, 254).

12

She also testified that people could get seriously hurt if log books were not properly kept. (2 RR 186). She also admitted that no disciplinary action was taken against Rayner. (2 RR 231).

Craig Skidmore, the dispatcher which Joe Tex claimed was its safety manager, testified that log books were important. (5 RR 11-12).[3] Skidmore testified that the purpose of log books was to keep tired drivers from operating vehicles. (5 RR 33). He admitted that Joe Tex got paid more if it didn't follow the law. (5 RR 214). He testified that he knew that fatigued drivers were a problem and would not be surprised if thirty to forty percent of accidents were caused by fatigue. (5 RR 15). He admitted that fatigue plays a part in most accidents. (5 RR 160). He testified that he would not say fatigue played a part in this accident because it would be bad for everyone. (5 RR 103-104).

**Objectively Rayner Knew of the Extreme Risk**

Rayner testified that he knew that 18-wheelers could cause catastrophic injuries. (5 RR 205). He testified that it was important to keep up with the log books to prevent tired drivers. (5 RR 206). He also testified that if someone were not keeping his log books properly he would continue to violate those rules unless

---

[3] Both Setina and Dunavant sent letters to the Department of Transportation claiming that Joe Tex had hired Craig Skidmore as safety manager. (P. Ex. 24, 26, Appendices D and E [emphasis added]). Skidmore admitted that he was hired merely as a dispatcher. (5 RR 11-12). Skidmore testified that it was "not right to represent him as the safety manager when he was not." (5 RR 92).

someone put a stop to it. (5 RR 209). He testified that on the day of the accident his log books were "screwed up again." (5 RR 294).

**Evidence Supports Objective Prong for Gross Negligence**

This evidence shows that when viewed from Rayner's and Joe Tex's standpoint at the time of the wreck, fatigued driving involved an extreme degree of risk and could cause potentially catastrophic harm to others. This clearly met the objective element for gross negligence. It further showed that Rayner and Joe Tex had actual subjective awareness of the risk involved.

**Joe Tex Proceeds with Conscious Indifference**

Despite being aware of the risks involved in having falsified log books and allowing drivers to drive with them, Joe Tex refused to change. Setina testified that despite having been fined thousands of dollars by the Department of Transportation he never even bothered to look at what the violations were. (2 RR 263). He admitted that Rayner was never written up for his violations. (2 RR 269). He testified that despite all the violations by Rayner he would still allow him to drive a Joe Tex truck even today and that there was no time he would have prevented him from doing so. (2 RR 276-77). He chose to ignore the fact that Rayner had fourteen (14) violations for missing log books for the month before the accident. (2 RR 280). Despite Joe Tex's policy to document disciplinary actions, there was no documentation that Rayner had ever been disciplined. (2 RR 269). After the DOT audit found significant

14

violations in log books he still refused to get rid of any of the bad offenders. (2 RR 322).

Angie Dunavant testified that she knew Rayner was the second worst perpetrator in the DOT audit. (2 RR 156). Rayner was cited for nine (9) violations in the DOT audit before the accident. (2 RR 87). Despite knowing about the falsification of log books, and that Rayner was the second worst offender, and that she should take action against offending drivers for falsifying log books, she did not terminate Rayner. (2 RR 156, 167). She had no documentation that she had ever discussed the log book violations with Rayner. (2 RR 231). Instead, she told the DOT that she was going to lay off the drivers responsible for the violations found in the DOT audit. (2 RR 167; P. Ex. 27, Appendix F). No one was laid off. (2 RR 167).

**Rayner Proceeds with Conscious Indifference**

Rayner at least admitted that he knew that someone who was falsifying his log books would probably continue to do so unless someone put a stop to it. (5 RR 209; 247). He testified that "I suck at logs." (5 RR 218). He had been sloppy with his log books for years. (5 RR 287). But Joe Tex never bothered to correct the problem. (5 RR 223).

Skidmore, the purported safety manager, even testified that Rayner was good with his log books. (5 RR 22-23). This despite the DOT audit that clearly showed that Rayner falsified his log books. (P. Ex. 3). One violation showed that Rayner

15

claimed in his DOT log book that he was off all day in Corpus Christi but in fact drove 832 miles for 13 hours and 59 minutes to Moriarty, New Mexico. (2 RR 268; P. Ex. 3, Appendix B p. 2 [emphasis added]). Rayner testified that in the thirty days prior to the accident he had twelve (12) missing log books. (5 RR 235; P. Ex. 18, Appendix C [emphasis added]). He was speeding twice. (5 RR 235). He did not get disciplined for that. (5 RR 239-240). He testified that if his log books were falsified on the day before the accident you could not tell if he was fatigued. (5 RR 251). He then testified that his log books at that time were "screwed up again." (5 RR 294).

**Evidence Supports the Subjective Prong for Gross Negligence**

Despite an actual awareness of the risks, it is clear from Joe Tex's actions that, as Ms. Dunavant said, Joe Tex "just didn't care." (2 RR 80). Starting with an owner that thinks he gets to run the company the way he wants, through falsified log books on the day of the wreck, the jury could reasonably believe Joe Tex did not care. This clearly meets the subjective element required to prove gross negligence. The jury could have reasonably found that Rayner and Joe Tex's cumulative and continuing safety violations caused Rayner to be fatigued at the time of the accident that caused him not to see Dillon's car in front of him. See Dalworth Trucking Co. V. Bulen, 924 S.W.2d 728, 734 (Tex. App. – Texarkana 1996, no writ).

16

**Defendants Had No Credibility**

The jury is the one who judges the credibility of the witnesses. <u>In Re J.O.A.</u>, 283 S.W.3d at 346; <u>In Re H.R.M.</u>, 209 S.W.2d at 108. It is clear that they reasonably did not believe that Joe Tex had a system in place to determine whether or not the drivers were fatigued. See <u>USA Truck, Inc.</u>, 189 S.W.3d at 907. This along with the evidence the fact that Rayner did not see Dillon, and Rayner's admission that he could possibly have been fatigued if his books were falsified, the jury could reasonably believe he was fatigued at the time of the accident because of Joe Tex's actions.

**Lack of Evidentiary Support for Defendants' Argument**

Despite the overwhelming evidence of gross negligence set forth above, Rayner and Joe Tex continue to argue that there was no "direct evidence" of fatigue. This clearly ignores the fact that there is overwhelming circumstantial evidence of fatigue. "Circumstantial evidence can be used to prove gross negligence." <u>Boerjan</u>, 436 S.W.3d at 311. Even Rayner admitted that if his log books were wrong the day before the accident there was no way he could tell the jury he was not fatigued on the day of the accident. (5 RR 251).

Despite this Defendants argue that to find that Rayner was fatigued the jury would have to infer that he intentionally falsified his log books. The jury did not have to infer that he falsified his log books because Rayner admitted that he had done

17

so on numerous occasions, including the day before the accident and the day of the accident. (5 RR 225, 235, 294). Rayner also admitted on the day of the accident that he had improperly filled out his log book before he even left that morning. (5 RR 294).

The jury does not even have to make an inference, it simply must believe Rayner that he falsified his log books. From that, and his admission that there was no way to tell the jury he was not fatigued, the jury could infer from the accident that he was fatigued. He did not see Dillon prior to the accident. (5 RR 284-285). Rayner hit her from behind. (P. Ex. 17, Appendix A). Rayner didn't even know he'd hit her until he saw her in the median. (5 RR 284-285). Skidmore testified that fatigue played a role in most accidents. (5 RR 16). These facts, coupled with the utter lack of credibility of the Joe Tex witness, would lead a reasonable jury to but one conclusion: Rayner was fatigued at the time of the accident.

Even still Defendants argue that the jury could not reach that conclusion because of four uncontroverted facts that affirmatively demonstrated that "fatigue had nothing to do with the accident." (Appellants' brief p. 19). This conclusion is only based upon Defendants' belief in the credibility of their own witnesses. Unfortunately, for Defendants, the jury is the one who determines whether the evidence is credible or not. Joe Tex and Rayner's credibility was very much in

question.[4] The evidence showed that Joe Tex through its CFO and president were willing to lie to the Department of Transportation, and Rayner was continually falsifying his log books in violation of federal requirements. (P. Ex. 23, 24; P. Ex. 18, Appendix C). Therefore the jury had no basis to believe anything they testified to.

Despite this lack of credibility Defendants argue that it was undisputed that the responding officer did not identify fatigue as a cause of the accident. (Appellant's Brief p. 19). While there is no note on the accident report Rayner testified that he did not really even talk to the officer at the accident scene. (5 RR 255). Therefore, one would not expect the officer to identify fatigue as a cause of the accident if he didn't really speak to Rayner.

Defendants also argue that the testimony of dispatcher Craig Skidmore (who Joe Tex represented to be their safety manager) that Rayner was not fatigued and did not appear tired was uncontroverted. (Appellants' Brief p. 19). Skidmore testified that he would not say that fatigue was a factor in the accident because it was bad for everyone. (5 RR 103-104).

---

[4] Setina was not credible. He initially lied to the jury that he was a casual fisherman not a professional with no sponsors like Berkley. (2 RR 253-257; 3 RR 30-34). He was forced to admit that was false when confronted with photos of him in his Berkley-sponsored shirt winning $25,000.00 in a professional tournament. (P. Ex. 35). He also admitted winning over $209,000 as a professional fisherman. (3 RR 34). He also admitted lying to the Department of Transportation that Joe Tex had hired a safety manager to try to get his safety rating changed when it had not. (2 RR 283; P. Ex. 24, 26 [emphasis added]).

Defendants also argue that because Rayner's log book only shows that he was driving three or four hours on the  day of the accident he could not have been fatigued. (Appellants' Brief p. 19).  Rayner's own testimony was that if his log books were falsified the day before the accident there was no way that he could tell the jury that he was not fatigued.  (5 RR 251).

Finally, Defendants argue that because Rayner denied he was fatigued the jury was required to agree with him.  For the reasons set forth above Rayner was not a credible witness that the jury was required to believe.

The jury is the sole judge of the credibility of the witnesses, did not have to accept the testimony that Defendants now attempt to rely on, particularly in light of the fact that it was controverted, and there was little if any credibility attributable to Joe Tex and Rayner.

## CONCLUSION

The evidence clearly supports the required elements for the jury to find gross negligence.  The Defendants were not credible.  The evidence was that Defendants knew of the extreme risk of falsifying log books which allowed fatigued drivers to cause catastrophic injuries, but simply did not care.  Didn't care enough to get rid of the worst offenders.  Didn't care enough to even retrain the offending drivers. Therefore the jury's verdict should be affirmed.

20

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellee, KRISTA DILLON, prays that this Court affirm the trial court's judgment; and for such other and further relief to which she may show herself to be entitled.

Respectfully submitted,

_/s/ John R. Mercy_

John R. Mercy
Texas State Bar No. 13947200
MERCY ✸ CARTER ✸ TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX 75503
Telephone: (903) 794-9419
Facsimile: (903) 794-1268
E-mail: jmercy@texarkanalawyers.com


Brent Goudarzi
Texas State Bar No. 00798218
Email: brent@goudarzi-young.com
Marty L. Young
Texas State Bar No. 24010502
Email: myoung@goudarzi-young.com
Geoffrey Hoover
Texas State Bar No. 24074437
Email: ghoover@goudarzi-young.com
GOUDARZI & YOUNG
P.O. Box 910
Gilmer, TX 75644
Telephone: (903) 843-2544
Facsimile: (903) 843-2026

ATTORNEYS FOR APPELLEE

21

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2015 a true and correct copy of the foregoing *Brief of Appellee* was served on all counsel of record by the Electronic Service Provider, as follows:

Mr. Samuel V. Houston, III
HOUSTON DUNN, PLLC
4040 Broadway, Suite 440
San Antonio, TX 78209
Email: sam@hdappeals.com

Mr. Bryan P. Reese
Email: breese@feesmith.com
Ms. Jennifer M. Lee
Email: jlee@feesmith.com
FEE, SMITH, SHARP & VITULLO, L.L.P.
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, TX 75240

/s/ *John R. Mercy*
John R. Mercy

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4, I hereby certify that the foregoing Brief of Appellee contains 4070 words.  This is a computer-generated document created in WordPerfect using 14-point typeface.   In making this certificate I am relying on the word count provided by the software used to prepare the document.

/s/ *John R. Mercy*
John R. Mercy

# No. 06-15-00009-CV

IN THE COURT OF APPEALS FOR THE

SIXTH DISTRICT OF TEXAS

AT TEXARKANA

DENNIS RAYNER and
JOE TEX XPRESS, INC.                                                    APPELLANTS

V.

KRISTA DILLON                                                          APPELLEE

_____

## APPENDIX INDEX
_____

A    -    Accident Report Drawing (P. Ex. 17 p. 6)

B    -    Hours of Service: Record of Duty Status Falsification List
          (P. Ex. 3 (emphasis added])

C    -    Joe Tex July 12, 2010 Violation Report (P. Ex. 18 [emphasis added]

D    -    4.30.10 Joe Tex letter (P. Ex. 26 [emphasis added])

E    -    7.1.10 Joe Tex letter (P. Ex. 24 [emphasis added])

F    -    Joe Tex letter (P. Ex. 27 [emphasis added])

Case Number: 1000017572      Date: 07/23/10

Location: I 30 Eastbound 126 mm

I- 30

Unit 3

Unit 1

Unit 2

←N→

NOT TO SCALE



| JOE TEX XPRESS INC | Review Date: |
|---|---|
| U.S. DOT #: 1254608 | 04/14/2010 |

## Hours of Service: Record of Duty Status Falsifications List
### Contains Type: Federal and State - All Days Checked

**Collins, Tracy Todd**

| 12/14/2009 | Nominal | Federal |
|---|---|---|

Documents: Driver Tracy Todd Collins shows fueling in Van, TX at 9:49 AM (CT).
Logs: Driver Tracy Todd Collins shows departing Van, TX at 9:30 AM (CT) towards Dallas, TX.

09:49     COMDATA Fuel Report

**Gray, James Stuart**

| 12/18/2009 | Nominal | Federal |
|---|---|---|

Documents: Driver James Stuart Gray shows fueling in Baytown, TX at 4:28 PM (CT).
Logs: Driver James Stuart Gray shows fueling in Houston, TX between 5:00 PM (CT) and 6:00 PM (CT). As per PC miler, Houston, TX to Baytown, TX is approximately 26 miles and 29 minutes from each other.

16:28     COMDATA Fuel Report

| 1/2/2010 | Critical | Federal |
|---|---|---|

Documents: Driver James Stuart Gray shows fueling in Socorro, TX at 4:39 PM (CT).
Logs: Driver James Stuart Gray shows on duty not driving in Eloy, AZ between 2:00 PM (CT) and 2:30 PM (CT) and off duty in Eloy, AZ between 2:30 PM (CT) and midnight. As per PC miler, Socorro, TX to Eloy, AZ is approximately 390 miles and 5 hours and 25 minutes from each other.

16:39     COMDATA Fuel Report

| 1/3/2010 | Critical | Federal |
|---|---|---|

Documents: Driver James Stuart Gray shows fueling in Las Cruces, NM at 8:04 PM (CT).
Logs: Driver James Stuart Gray shows off duty in Eloy, AZ between midnight and 8:00 PM (CT) and on duty not driving between 8:00 PM (CT) and 9:00 PM (CT). As per PC miler, Eloy, AZ to Las Cruces, NM is approximately 326 miles and 4 hours and 26 minutes from each other.

08:04     COMDATA Fuel Report

| 1/7/2010 | Critical | Federal |
|---|---|---|

Documents: Driver James Stuart Gray shows fueling in Ranger, TX at 5:02 PM (CT).
Logs: Driver James Stuart Gray shows sleeper berth in Tallulah, LA between 5:00 PM (CT) and midnight. As per PC miler, Ranger, TX to Tallulah, LA is approximately 459 miles and 6 hours and 43 minutes from each other.

17:02     COMDATA Fuel Report

| 1/9/2010 | Critical | Federal |
|---|---|---|

Documents: Driver James Stuart Gray shows fueling in Hammond, LA at 12:12 AM (CT).
Logs: Driver James Stuart Gray shows off duty in Mobile AL between midnight and 12:30 AM (CT) and on duty not driving in Mobile, AL between 12:30 AM (CT) and 1:00 AM (CT). As per PC miler, Mobile, AL to Hammond, LA is approximately 158 miles and 2 hours and 19 minutes from each other.

00:12     COMDATA Fuel Report

**Rayner, Dennis**

| 2/3/2010 | Nominal | Federal |
|---|---|---|

Documents: Driver Dennis Rayner shows fueling in North Little Rock, AR at 8:31 PM (CT).
Logs: Driver Dennis Rayner shows off duty in Conway, AR between 6:00 PM (CT) and midnight. As per PC miler, Conway, AR to North Little Rock, AR is approximately 33 miles and 35 minutes from each other.

20:31     COMDATA Fuel Report

---

 



EXHIBIT
3

JTX 000422



**JOE TEX XPRESS INC**
U.S. DOT #: 1254608

| Review Date: |
| 04/14/2010 |

## Hours of Service: Record of Duty Status Falsifications List
Contains Type: Federal and State - All Days Checked

**Rayner, Dennis**

| 2/4/2010 | Critical | Federal |
|---|---|---|

Documents: Driver Dennis Rayner shows fueling in Calera, OK at 7:07 PM (CT).
Logs: Driver Dennis Rayner shows arriving in Cleburne, TX at 7:30 PM (CT) and going off duty between 7:30 PM (CT) and midnight. As per PC miler, Cleburne, TX to Calera, OK is approximately 138 miles and 2 hours and 25 minutes from each other.

19:07     COMDATA Fuel Report

| 2/5/2010 | Critical | Federal |
|---|---|---|

Documents: Driver Dennis Rayner shows fueling in Vinton, LA at 9:45 PM (CT).
Logs: Driver Dennis Rayner shows off duty all day in Cleburne, TX. As per PC miler, Vinton, LA to Cleburne, TX is approximately 460 miles and 7 hours and 5 minutes from each other.

21:45     COMDATA Fuel Report

| 2/9/2010 | Critical | Federal |
|---|---|---|

Documents: Driver Dennis Rayner shows fueling in Van, TX at 5:57 PM (CT).
Logs: Driver Dennis Rayner shows driving from Pauls Valley, OK and Perry, OK between 5:30 PM (CT) and 7:00 PM (CT). As per PC miler, Pauls Valley, OK to Van, TX is approximately 236 miles and 3 hours and 30 minutes from each other. As per PC miler, Perry, OK to Van, TX is approximately 351 miles and 5 hours from each other.

17:57     COMDATA Fuel Report

| 2/11/2010 | Critical | Federal |
|---|---|---|

Documents: Driver Dennis Rayner shows fueling in North Platte, NE at 1:49 PM (CT).
Logs: Driver Dennis Rayner shows going off duty in Aurora, NE between 2:00 PM (CT) and 3:00 PM (CT). As per PC miler, North Platte, NE to Aurora, NE is approximately 160 miles and 2 hours and 14 minutes from each other.

13:49     COMDATA Fuel Report

| 2/26/2010 | Critical | Federal |
|---|---|---|

Documents: Driver Dennis Rayner shows fueling in Moriarty, NM at 6:04 PM (CT).
Logs: Driver Dennis Rayner shows off duty in Corpus Christi, TX between 6:30 PM (CT) and midnight. As per PC miler, Corpus Christi, TX to Moriarty, NM is approximately 832 miles and 13 hours and 59 minutes from each other.

18:04     COMDATA Fuel Report

| 2/28/2010 | Critical | Federal |
|---|---|---|

Documents: Driver Dennis Rayner shows fueling in San Antonio, TX at 7:18 AM (CT).
Logs: Driver Dennis Rayner shows off duty all day in Corpus Christi, TX all day. As per PC miler, Corpus Christi, TX to San Antonio, TX is approximately 142 miles and 2 hours and 5 minutes from each other.

07:18     COMDATA Fuel Report

| 3/1/2010 | Nominal | Federal |
|---|---|---|

Documents: Driver Dennis Rayner shows fueling in Kingsville, TX at 7:18 AM (CT).
Logs: Driver Dennis Rayner shows off duty in Corpus Christi, TX between midnight and 10:30 AM (CT) and 11:00 AM (CT) and midnight. As per PC miler, Corpus Christi, TX to Kingsville, TX is approximately 36 miles and 43 minutes from each other.

17:35     COMDATA Fuel Report

JTX 000423


## Hours of Service: Record of Duty Status Falsifications List
Contains Type: Federal and State - All Days Checked

**Rayner, Dennis**

| 3/2/2010 | Nominal | Federal |

Documents: Driver Dennis Rayner shows fueling in Troy, TX at 8:11 PM (CT).
Logs: Driver Dennis Rayner shows off duty in Troy, TX between 5:00 PM (CT) and midnight. As per PC miler, Troy, TX to Waco, TX is approximately 26 miles and 24 minutes from each other.
20:11　　　COMDATA Fuel Report

**Reese, James Michael**

| 10/29/2009 | Nominal | Federal |

Documents: Driver James M. Reese shows fueling in Simpsonville, KY at 7:46 AM (CT).
Logs: Driver James M. Reese shows off duty in Louisville, KY between midnight and 8:00 AM (CT). As per PC miler, Simpsonville, KY to Louisville, KY is approximately 26 miles and 27 minutes from each other.
07:46　　　COMDATA Fuel Report

| 11/3/2009 | Critical | Federal |

Documents: Driver James M. Reese shows fueling in Shreveport, LA at 6:07 PM (CT).
Logs: At 6:07 PM (CT), driver James M. Reese shows 53 minutes away from arriving in Fort Worth, TX. As per PC miler, Shreveport, LA to Fort Worth, TX is approximately 220 miles and 3 hours and 12 minutes from each other.
18:07　　　COMDATA Fuel Report

**Spiker, Raymond**

| 1/6/2010 | Critical | Federal |

Documents: Driver Raymond Spiker shows fueling in Odessa, TX at 6:10 PM (CT).
Logs: Driver Raymond Spiker shows off duty in Ozona, TX between 5:15 PM (CT) and 9:00 PM (CT). As per PC miler, Odessa, TX to Ozona, TX is approximately 135 miles and 2 hours and 28 minutes from each other.
18:10　　　COMDATA Fuel Report

| 1/8/2010 | Critical | Federal |

Documents: Driver Raymond Spiker shows fueling in Amarillo, TX at 6:00 PM (CT).
Logs: Driver Raymond Spiker shows fueling in Amarillo, TX between 6:15 PM (CT) and 6:30 PM (CT), at 8:00 PM (CT) driver shows a 1/2 hour away from Boise City, OK and arriving in Boise City, OK at 8:30 PM (CT) and going into the sleeper berth between 8:30 PM (CT) and midnight. As per PC miler, Amarillo, TX to Boise City, OK is approximately 117 miles and 2 hours and 22 minutes from each other.
20:00　　　COMDATA Fuel Report

| 1/11/2010 | Nominal | Federal |

Documents: Driver Raymond Spiker shows fueling in Cheyenne, WY at 3:07 PM (CT).
Logs: Driver Raymond Spiker shows fueling in Cheyenne, WY between 2:00 PM (CT) and 2:15 PM (CT). Driver also shows departing Cheyenne, WY at 2:45 PM (CT).
15:07　　　COMDATA Fuel Report

| 1/14/2010 | Critical | Federal |

Documents: Driver Raymond Spiker shows fueling in Toms Brook, VA at 5:37 PM (CT).
Logs: Driver Raymond Spiker shows going off duty and sleeper berth in Aberdeen, MD between 4:00 PM (CT) and midnight. As per PC miler, Aberdeen, MD to Toms Brook, VA is approximately 156 miles and 2 hours and 32 minutes from each other.
17:37　　　COMDATA Fuel Report

JTX 000424

**Joe Tex Xpress, Inc**
619 W Rutherford
Mount Vernon, TX 75457

July 12, 2010

RAYNER, DENNIS

Dear DENNIS,

DENNIS, In auditing your daily logs, we found the following violations. This is NOT a request for corrected logs. ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ If you do not understand why you were in violation, or if you feel you have been cited in error, please schedule a review with the Safety Department.

| Date | Description | Comment | SV Pts |
|------|-------------|---------|--------|
| 06/01 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/02 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/03 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/04 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/05 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/06 | Missing Log | Missing | 1 |
| 06/07 | Missing Log | Missing | 1 |
| 06/09 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/11 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/15 | Speeding | Avg:66.64 Max:65.00 | 2 |
| 06/15 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/16 | Speeding | Avg:68.42 Max:65.00 | 2 |
| 06/17 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/18 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/19 | Post Trip Inspection | Must be shown on line 4 | 1 |
| 06/20 | Missing Log | Missing | 1 |
| 06/21 | Missing Log | Missing | 1 |
| 06/22 | Missing Log | Missing | 1 |
| 06/23 | Missing Log | Missing | 1 |
| 06/24 | Missing Log | Missing | 1 |
| 06/25 | Missing Log | Missing | 1 |
| 06/26 | Missing Log | Missing | 1 |
| 06/27 | Missing Log | Missing | 1 |
| 06/28 | Missing Log | Missing | 1 |
| 06/29 | Missing Log | Missing | 1 |
| 06/30 | Missing Log | Missing | 1 |

If you have any questions please call your Safety Director. Drive safely.

Sincerely yours,

JOB TEX XPRESS, INC

*Post Trip is on 4  3 copys*
*you have missing logs*
*Didn't know to log at 65*

No Batch
Copyright (c) 1996-2010 ESSI. All rights reserved.



EXHIBIT

18

PENGAD 800-631-6989

JTX 000477





4.30.2010

To Whom It May Concern:

Earlier this month, Joe Tex Xpress, Inc. went through a Federal DOT audit. At the conclusion of the audit, we were given a Conditional rating and advised to make a few changes before a second audit later this year. Since this time, we have already made several changes that have had a positive impact not only our fleet, but on our entire company as well.

In September of 2009, Craig Skidmore was hired as our new safety manager with 33 years experience in the transportation industry. Since his time with Joe Tex Xpress, Inc., he has made many improvements. After seeing the results of the audit, he has made even more of an effort in advising our drivers on the proper way to maintain their driver logs and reminding drivers of key safety tips in order to keep themselves, as well as other drivers on the road, safe. As part of his safety program, Craig has began holding regular safety meetings every four months where all parties are instructed on proper truck maintenance and driving criteria.

As part of our safety program for 2010, we are showing a video that informs drivers of the new CSA 2010 rules and regulations where it is made clear that no violations are acceptable. Our company has also issued a new Safety Manual for each driver to keep with them at all times. To further instruct our drivers on proper safety procedures, drivers have been required to take the Alabama Coil Certification which includes a general cargo securement course that must be passed before completing the specific Alabama portion of the course.

Our company has also established a warning system for drivers in which the driver is allowed two warnings and upon the third, they are terminated. This system ensures that drivers and managers alike are aware of each situation with each driver. This strict policy allows us to possess a competitive advantage on the industry.

Because we have already seen a difference in several areas in such a short amount of time, we are looking forward to our follow-up audit later this year. By continuing to make improvements, we are sure that the outcome will be in our favor.

Thank you for your time-


Angie Dunavant
CFO


619 W Rutherford • Mt. Vernon, TX 75457
800.824.9742 toll free • 903.537.7100 phone • 903.537.7262 fax
www.joetexusa.com



EXHIBIT

26



7.01.2010

To Whom It May Concern:

On April 15, 2010, as our Federal DOT audit came to a close, our transportaton company was given a Conditional safety rating. Since that time, we have been working diligently to improve our rating. The following will explain the new regulations that we are currently implementing.

In an effort to greatly improve our log auditing department, we have implemented an entirely new system. Previously, we were unaware of the information that our log auditing company was missing when editing the drivers' daily logs. We have discontinued the service of that company and have opted to hire a company that we already work with on our fuel. We are very excited to see improvements in this area. Attached, you will find the new Log Violation Policy which we have put in place since the time of our audit.

In September of 2009, Craig Skidmore was hired as our new safety manager with 33 years experience in the transportation industry. Since his time with Joe Tex Xpress, Inc., he has made many improvements. After seeing the results of the audit, he has made even more of an effort in advising our drivers on the proper way to maintain their driver logs and reminding drivers of key safety tips in order to keep themselves, as well as other drivers on the road, safe.

In the winter of 2009, after we had several seasoned members of the Joe Tex Xpress, Inc. team leave, it was discovered that there was quite a bit of inconsistency that had been building up for quite some time. After assigning specific jobs to specific people, we have made significant improvements to several of our systems, the most important of those being our log auditing program.

619 W Rutherford • Mt. Vernon, TX 75457
800.824.9742 toll free • 903.537.7100 phone • 903.537.7262 fax
www.joetexusa.com



EXHIBIT

24

JTX 000405

In mid-June, we received an informational packet which defines our civil penalty concerning our Case Number: TX-2010-1154-US096. While we are now aware that we had drivers falsifying logs, we were not aware of it at the time of our audit. At the time of our audit, we had full faith in our log auditing company. Each month we would print out log violation letters and there were never reports of log falsifiction. As far as we knew, our drivers were doing a great job keeping up with their logs. Since the audit, we have discontinued the use of our former log auditing company and have gone with a company we have formed a great bond with prior to this time. This company works quickly, efficiently, and has our full trust as we have seen their work first-hand in other service areas of their company. Because we were truly shocked at the violations we received for the driver logs, we are asking that the fine be reduced.

As you can see, we have been working very hard and trying our very best to make significant changes to the operations area of our company. Seeing improvements in the short time it has been since our audit, has moral high in our office. We are very enthusiastic as we look forward to the future months when we will truly see the turn around we have brought to our company as a whole.

Thank you for your time-

Don Setina
Joe Tex Xpress
President/CEO

818 W Rutherford · Mt. Vernon, TX 75457
800.824.9742 toll free · 903.537.7100 phone · 903.537.7262 fax
www.joetexusa.com

JTX 000406



**JOE TEX XPRESS INC**

To Whom It May Concern:

Since the beginning stages of the implementation of the new CSA 2010 program, we have been monitoring our scores and diligently working to reduce the scores in all of our BASIC categories. We have been working particularly hard to reduce our Unsafe Driving BASIC score. Some of the things we have been doing include: running PSP reports prior to the hiring of new drivers to make sure that they do not an outstanding amount of DOT Roadside Inspections and no Out of Service (OOS) violations, continuing CSA training via videos and other in office training, and specific driver log checks and one on one reminders and training as drivers make their bi-monthly run through the yard. We also have made the tough, but necessary decision to lay-off some of our long-time drivers who were responsible for many of the violations and scoring issues we were encountering.

Thank you for your time and we look forward to working with you.

Regards-

Joe Tex Xpress, Inc.

619 W Rutherford • Mt. Vernon, TX 75457
800.824.9742 toll free • 903.537.7100 phone • 903.537.7262 fax
www.joetexusa.com



EXHIBIT

27

JTX 000375